## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 29 2016, 8:05 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of S.L. (Minor Child),

and

M.C. (Father),
*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

January 29, 2016

Court of Appeals Case No. 21A01-1507-JT-936

Appeal from the Fayette Circuit Court

The Honorable Beth A. Butsch, Judge

Trial Court Cause No. 21C01-1501-JT-7

*Appellee-Petitioner*

**Crone, Judge.**

# Case Summary

M.C. ("Father") appeals a trial court judgment terminating his parental relationship with his daughter S.L. He maintains that the evidence is insufficient to support the trial court's conclusion that termination is in S.L.'s best interests. Finding the evidence sufficient, we affirm.

# Facts and Procedural History

In the spring of 2006, Father raped his thirteen-year-old sister ("Mother"), and a pregnancy resulted. In December 2006, S.L. was born. Sometime shortly thereafter, Father was convicted of rape and has been incarcerated in Ohio ever since. His expected release date is February 2027.

S.L. is mentally disabled and was diagnosed with post-traumatic stress disorder ("PTSD") stemming from a sexual molestation. She also suffers from attachment disorder and oppositional defiant disorder.

Early in 2013, Mother and her husband ("Stepfather") became involved with the Department of Child Services ("DCS") due to unsanitary conditions in their home and agreed to participate in services. In October 2013, DCS received a

report that S.L. had attended school with head lice, hygiene issues, and a strong urine odor. DCS investigated the home where S.L. lived with Mother, Stepfather, and her half siblings and discovered that it was littered with urine, feces, food particles, flies, gnats, and fleas. In November 2013, the trial court adjudicated S.L. and her half siblings as children in need of services ("CHINS").[1] DCS removed the children in December 2013 and placed them together in foster care. The trial court issued dispositional and participation orders for Mother, Stepfather, and Father (who remained incarcerated in Ohio). Father did not attempt to communicate with S.L. and did not complete any parenting programs.

[5] In January 2015, DCS filed a petition for involuntary termination of Father's parental rights.[2] At the ensuing factfinding hearing, Father participated telephonically due to his incarceration. The court-appointed special advocate ("CASA") testified concerning S.L.'s special needs and the level of daily care required for her. Both the CASA and the DCS family case manager testified concerning S.L.'s bond with her foster family and their attentiveness to her care. Both expressed concern over Father's history of incest, his extended incarceration, and his inability to provide the level of care necessary for S.L., and both recommended termination of Father's parental rights and adoption by

---

[1] Because the half siblings are not a part of the termination proceedings below or on appeal, we limit our discussion to Father and S.L.

[2] Mother consented to the termination of her parental relationship with S.L.

the foster family. In June 2015, the trial court issued an order terminating Father's parental relationship with S.L. Father now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

[6] Father challenges the sufficiency of evidence supporting the trial court's judgment terminating his parental relationship with S.L. We will set aside the trial court's judgment only if it is clearly erroneous. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We neither reweigh evidence nor judge witness credibility. *In re A.I.*, 825 N.E.2d 798, 805 (Ind. Ct. App. 2005), *trans. denied*. Rather, we consider only the evidence and inferences most favorable to the judgment. *Id.*

[7] In *Bester*, our supreme court stated,

> The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. A parent's interest in the care, custody, and control of his or her children is perhaps the oldest of the fundamental liberty interests. Indeed the parent-child relationship is one of the most valued relationships in our culture. We recognize of course that parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.

839 N.E.2d at 147 (citations, quotation marks, and alteration omitted).

[8]     To obtain a termination of the parent-child relationship between Father and S.L., DCS was required to establish in pertinent part:

> (A) that one (1) of the following is true:
>
> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
> ….
>
> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[9] In recognition of the seriousness with which we address parental termination cases, Indiana has adopted a clear and convincing evidence standard. Ind. Code § 31-37-14-2; *Castro v. State Office of Family & Children,* 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied.* "Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's survival. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citation omitted).

[10] Father does not challenge the trial court's findings of fact but instead challenges only the sufficiency of evidence to support the trial court's conclusion that termination of his parental rights is in S.L.'s best interests. A determination of a child's best interests should be based on the totality of the circumstances. *In re A.P.*, 981 N.E.2d 75, 84 (Ind. Ct. App. 2012). Although not dispositive, permanency and stability are key considerations in determining the best interests of a child. *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009). "[T]he testimony of service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010), *trans. dismissed*.

[11] Here, both the DCS family case manager and the CASA testified that termination is in S.L.'s best interests. Father correctly points out that the decision to terminate his parental rights may not be based solely on professionals who testify that there is a "better place" for a child to live. *See In*

*re A.B.*, 888 N.E.2d 231, 239 (Ind. Ct. App. 2008) (reversing termination order based solely on testimony of professionals that adoption by foster parent was in child's best interests where other statutory requirements were not supported by clear and convincing evidence), *trans. denied*. However, the record here shows that the recommendations of the family case manager and the CASA were not the sole basis for terminating Father's parental rights. Rather, the evidence shows that S.L. was conceived when Father raped his thirteen-year-old sister, for which he is serving a lengthy prison term with an expected release date in 2027. By that time, S.L., currently age nine, will be approximately twenty years old. Her needs are extensive, as she is mentally disabled and suffers from PTSD, attachment disorder, and oppositional defiant disorder, thus requiring a commensurate level of daily care and consistent attention.

[12] Father bemoans the court's emphasis on stability and permanency, claiming that DCS failed to establish that the current arrangement is detrimental to S.L. He asserts that he does not want her to grow up without a father like he did, yet he admitted that he had neither attempted to communicate with her nor completed parenting programs.[3] S.L. has a strong bond with her foster family and no bond with Father. The foster family can provide her with consistent care and Father cannot. Given the overwhelming evidence supporting

---

[3] "If the parent feels the services ordered by the court are inadequate to facilitate the changes required for reunification, then the onus is on the parent to request additional assistance from the court or DCS." *Prince v. Dep't of Child Servs.*, 861 N.E.2d 1223, 1231 (Ind. Ct. App. 2007).

termination and recognizing the trial court's unique position to determine the credibility of witnesses, we cannot say that the trial court erred in giving credence to the professionals' opinions that termination and adoption are in S.L.'s best interests.

[13] In sum, Father has failed to establish that the trial court clearly erred in concluding that termination of the parent-child relationship is in S.L.'s best interests. Consequently, we affirm.

[14] Affirmed.

Vaidik, C.J., and Bailey, J., concur.